UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOHN EDWARD ANDERSON, III,                )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )            No. 3:16-CV-235-HBG
                                          )
OAK RIDGE SCHOOLS BOARD OF                )
EDUCATION a/k/a OAK RIDGE CITY OF         )
BOARD OF EDUCATION, *et al.*,             )
                                          )
            Defendants.                   )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 12].

Now before the Court are Defendants' Motions to Alter Judgment, or Alternatively, for a New Trial [Docs. 213, 215, and 217]. The Motions are ripe and ready for adjudication. Accordingly, for the reasons more fully explained below, the Court **GRANTS IN PART** Defendant Oak Ridge Schools Board of Education's Motion [**Doc. 213**] and **DENIES** Defendants' Motions [**Docs. 215, and 217**].

## I.      BACKGROUND

This lawsuit arose out of allegations regarding the suspension of a teacher and athletics coach, wherein Plaintiff claimed that he was ultimately forced to retire. Plaintiff filed suit against Oak Ridge Schools Board of Education ("ORS"), Dr. Borchers, the school superintendent, and Dr. Marczak, the assistant school superintendent.

Plaintiff served as a science teacher and a track coach at Oak Ridge High School for thirty-six (36) years from August 1979 until April 2015. Plaintiff alleged that beginning on April 13, 2015, and continuing through April 30, 2015, Defendants subjected him to a hostile and abusive work environment and treated him differently and less favorably than younger colleagues. Plaintiff claimed that following complaints from a handful of parents about a track team trip to South Carolina on April 10 and April 11, 2015, Defendants disregarded normal investigation protocol, suspended Plaintiff from his coaching position, and threatened to fire him from his teaching position. Plaintiff contended that on April 20, 2015, Defendants again disregarded normal protocol, removed him from his longtime coaching position, and replaced him with a younger colleague. Plaintiff claimed that, subsequently, Defendants gave him a memorandum of alleged findings ("April 27 Memo") containing numerous allegations that they knew to be false. Defendants placed the April 27 Memo in his personnel file but did not include Plaintiff's statement of events.

In response to Defendants removing Plaintiff from his coaching position, some former students created a Facebook page in support of Plaintiff. In response to the Facebook page, a former student, who graduated in 2003, sent Defendant Borchers an email on April 30, 2015, claiming that Plaintiff had inappropriately touched her when she was a student. Plaintiff claimed that Defendants did not conduct any investigation into these allegations and forwarded the email to the Chief of the Oak Ridge Police Department. Plaintiff claims that Defendants failed to show him the email and that he was suspended indefinitely, without pay, and without due process. He was escorted out of the high school on April 30, 2015, by Dr. Marczak, who told Plaintiff he was going to be arrested. Plaintiff states that as a result of the totality of Defendants' conduct, he was forced to retire, and Plaintiff gave his intent to do so on June 2, 2015.

Defendants denied liability. Defendants claimed that Plaintiff was suspended on April 13, 2015, from his coaching position due the to the issues that arose during the South Carolina track meet. Dr. Marczak provided Plaintiff written notice indicating that he was suspended as the track coach on April 14, 2015. During a meeting on April 20, 2015, Dr. Marczak informed Plaintiff that he could not return to his position as head track coach, but after serving three additional weeks of suspension, he could return as the assistant track coach.

Defendants claim that on April 30, 2015, Dr. Borchers received an email from a former Oak Ridge High School student, claiming that Plaintiff inappropriately touched her when she was a student. Plaintiff was suspended immediately, and Dr. Borchers turned the matter over to law enforcement for investigation. Defendants claim that the next day, on May 1, 2015, Plaintiff's wife hand delivered a written note from Plaintiff to school administrators, which stated, "I plan to retire from Oak Ridge Schools effective June 2, 2015." Defendants claim that Plaintiff's decision to retire was completely voluntary and based upon numerous conversations he had with multiple attorneys and financial advisors.

The case was tried before the jury beginning on March 11, 2019, through March 18, 2019. At trial, Plaintiff claimed violations of his procedural due process rights and breach of contract against ORS. He also claimed violations of the Age Discrimination in Employment Act ("ADEA") and Tennessee Human Rights Act ("THRA"), along with defamation and false light invasion of privacy against Dr. Borchers and Dr. Marczak. At the close of Plaintiff's proof, Defendants moved for judgment as a matter of law with respect to all claims. The Court granted in part Defendants' motion, thereby dismissing Plaintiff's claims of age discrimination in violation of the ADEA and the THRA. *See* [Doc. 239 at 177-184]. The Court further concluded that no reasonable juror could

find that Plaintiff was subject to a hostile work environment based on his age. The Court submitted the remaining claims to the jury, which found and awarded as follows:

> Defendant Oak Ridge Schools Board of Education deprived Plaintiff of his due process rights pursuant to 42 U.S.C. § 1983 and awarded $635,097.00;

> Defendant Bruce Borchers deprived Plaintiff of his due process rights pursuant to 42 U.S.C. § 1983 and awarded $25,000 and $50,000 in punitive damages, for a total amount of $75,000;

> Defendant Chris Marczak deprived Plaintiff of his due process rights pursuant to 42 U.S.C. § 1983 and awarded $25,000 and $50,000 in punitive damages, for a total amount of $75,000;

> Defendant Oak Ridge Schools Board of Education breached its contract with Plaintiff and awarded $25,000;

> Defendant Bruce Borchers defamed Plaintiff and placed Plaintiff in a false light and awarded $190,000 and punitive damages in the amount of $250,000, for a total amount of $440,000; and

> Defendant Chris Marczak defamed Plaintiff and placed Plaintiff in a false light and awarded $190,000 and punitive damages in the amount of $250,000, for a total amount of $440,000.

Judgment was entered on March 19, 2019. [Docs. 203, 204]. The instant Motions followed.

## II.     POSITIONS OF THE PARTIES

As mentioned above, all three Defendants filed post-trial Motions. In their Motions, Defendants request that the Court amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e), grant Defendants' renewed judgment as a matter of law on all of Plaintiff's claims pursuant to Rule 50, or in the alternative, grant Defendants a new trial pursuant to Rule 59.

With respect to ORS's Motion, it argues that it could only be liable for violating Plaintiff's due process rights if its co-Defendant, Dr. Borchers, were found liable for violating Plaintiff's due process rights. Further, ORS argues that Plaintiff presented insufficient proof to show that Dr.

Borchers, and therefore, ORS, violated his procedural due process rights. ORS explains that Plaintiff was suspended and not terminated by Dr. Borchers, and because he had no claim for constructive discharge, Plaintiff had no viable procedural due process claims against ORS.

ORS states that even if Plaintiff could claim constructive discharge against Dr. Borchers, and therefore, ORS, Plaintiff presented insufficient proof on this issue. ORS argues that the evidence presented at trial also shows that Dr. Borchers complied with state law and board policy and reported the former student's allegation of inappropriate contact against Plaintiff to the Oak Ridge Police Department and suspended Plaintiff without pay pending further investigation. ORS argues that Plaintiff voluntarily retired and was not forced to retire.

ORS also asserts that Plaintiff presented insufficient proof to establish that it breached its contract with Plaintiff. ORS argues that Tennessee Code Annotated § 49-5-511(a)(3) provides that a director of schools may suspend a teacher at any time that may seem necessary pending an investigation and that if the teacher is vindicated or reinstated, the teacher shall be paid full back pay. ORS states that Plaintiff did not put forth sufficient proof that he was vindicated or reinstated. ORS states that the evidence shows that Plaintiff voluntarily submitted his resignation the day after he was suspended before an investigation could be completed by ORS or the Oak Ridge Police Department.

In the alternative, ORS requests a new trial pursuant to Rule 59(a). ORS asserts that the verdict was against the clear weight of the evidence. ORS relies on its above arguments in support of a new trial. In addition, ORS states that the jury was improperly charged, resulting in undue prejudice to ORS, and that the Court erred in excluding and admitting certain evidence. Finally, ORS states that the Judgment should be amended because the compensatory damage awards are

beyond the range supported by the proof, were likely awarded by mistake, and are so excessive as to shock the conscience.

Dr. Borchers relies on the same arguments regarding Plaintiff's due process claims. Further, Dr. Borchers argues that no reasonable juror could find that he defamed Plaintiff because Dr. Borchers denied making the allegedly defamatory statements, the alleged statements were not defamatory, and Plaintiff presented no proof that Dr. Borchers knew that the alleged statements were false or that he acted in reckless disregard for their truth. In addition, Dr. Borchers argues that no reasonable juror could find that he cast Plaintiff in a false light through the statements he allegedly made during the April 27, 2015 meeting with Plaintiff, because Plaintiff did not establish that Dr. Borchers knew that the alleged statements were false or that he made them with reckless disregard for their truth or falsity.

Dr. Borchers argues that in the alternative, the Court should order a new trial because the jury's verdict was against the weight of the evidence. Dr. Borchers asserts that the jury was improperly charged, resulting in undue prejudice against him. Dr. Borchers also states that the Court erred in admitting certain evidence and excluding other evidence. Finally, Dr. Borchers states that the Judgment should be amended because the compensatory and punitive damages awards are beyond the range supported by the proof and are so excessive as to shock the conscience.

Dr. Marczak also asserts that no reasonable juror could conclude that Plaintiff's due process rights were violated for the same reasons as above. Further, Dr. Marczak asserts that no reasonable juror could find that he defamed Plaintiff because Dr. Marczak denied making the allegedly defamatory statements and Plaintiff presented no proof that Dr. Marczak knew that the alleged statements were false or that he acted in reckless disregard for their truth. Dr. Marzack

asserts that no reasonable juror could find that he cast Plaintiff in a false light by including the April 27 Memo in his personnel file because Dr. Marczak denied making the statements alleged to have placed Plaintiff in a false light.

In the alternative, Dr. Marczak requests a new trial because the jury's verdict was against the weight of the evidence for the same reasons above. In addition, Dr. Marczak asserts that the jury was improperly charged, resulting in undue prejudice, and raising similar arguments to which ORS and Dr. Borchers raised. Further, Dr. Marczak argues that the Court erred by excluding certain evidence and by allowing other evidence. Finally, Dr. Marczak states that the Judgment should be amended because the compensatory and punitive damages award are beyond the range supported by the proof and are so excessive as to shock the conscience.

Plaintiff responds [Doc. 255] that the Court should deny Defendants' Motions because the evidence was sufficient to support the verdict. Plaintiff argues that Defendants have waived several arguments, including: (1) Defendant ORS could only be liable for violating Plaintiff's due process rights if co-Defendant Dr. Bruce Borchers were found liable, and (2) Plaintiff's due process rights were not implicated in this case because he was not terminated from his teaching position, and therefore, was not entitled to notice, an explanation, and an opportunity to respond. Further, Plaintiff argues that Defendants violated his due process rights. In addition, Plaintiff argues that ORS breached its contract with him when it permitted Dr. Borchers to suspend him without pay for more than three days and in failing to comply with the requirements of the Tennessee Teacher's Tenure Act in suspending him. Further, Plaintiff argues that Dr. Marczak and Dr. Borchers defamed him and cast him in a highly offensive false light before the public.

Plaintiff also argues that the Court should deny Defendants' Rule 59(a) Motions for a new trial based on the jury charge and the Court's evidentiary rulings.  Finally, Plaintiff asserts that the Court should deny Defendants' Rule 59(e) Motion to amend the damages awards.

Defendants dispute that they waived any arguments and maintain that Plaintiff's due process rights were not implicated because Plaintiff was not terminated from his teaching position. Defendants further contend that no reasonable jury could find that Plaintiff's due process rights were violated.  In addition, Defendants assert that no reasonable jury could find (1) that Plaintiff was constructively discharged, (2) that ORS breached Plaintiff's contract, or (2) that Dr. Borchers or Dr. Marczak defamed Plaintiff or cast him in a false light.  Finally, Defendants maintain that the Court should grant a new trial based upon the evidentiary rulings and the jury charge, or in the alternative, grant Defendants' Rule 59(e) motion to amend the damages awards.

## III.    STANDARD OF REVIEW

Defendants request that the Court (1) amend the Judgment pursuant to Rule 59(e), (2) grant renewed judgment as a matter of law on all of Plaintiff's claims pursuant to Rule 50, or (3) grant a new trial pursuant to Rule 59.  The Court will first discuss the standard of review pursuant to Rule 50 and then turn to Rule 59.

### A.    Rule 50

Rule 50(a)(1) provides as follows:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> **(A)** resolve the issue against the party; and
>
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1)(A)-(B).  If the motion is renewed after the trial, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;

> **(2)** order a new trial; or

> **(3)** direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50.

Courts have explained that renewed motions under Rule 50 should only be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, No. 09-14891, 2012 WL 12930710, at *1 (E.D. Mich. June 20, 2012) (citing *Denhof v. City of Grant Rapids*, 494 F.3d 535, 543 (6th Cir. 2007)) (other citations omitted).  "In ruling on a Rule 50 motion, the court must view the evidence in the light most favorable to the nonmoving party and it may not make credibility determinations or weigh the evidence."  *Id.* (citing *Denhof*, 494 F.3d at 543) (other citations omitted).

## B.    Rule 59

Rule 59 governs the grounds for a new trial or for altering or amending a judgment.  With respect to a new jury trial, Rule 59(a) provides as follows: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "[C]ourts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidence by: (1) the verdict being against the great weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."  *JP Morgan Chase Bank, N.A.,* 2012 WL 12930710, at *2 (quoting *Holmes v. City of Massillon, Ohio*,

78 F.3d 1041, 1045-46 (6th Cir. 1996)).  The overriding principle is "whether, in the judgment of the trial judge, such course is required to prevent an injustice."  *Kilgore v. Greyhound Corp.*, 30 F.R.D. 385, 387 (E.D. Tenn. 1962).

Pursuant to Rule 59(e), a Court may also amend or alter the judgment.  "A district court may grant a Rule 59(e) motion only to (1) correct a clear error of law, (2) account for newly discovered evidence, (3) accommodate an intervening change in the controlling law, or (4) otherwise prevent manifest injustice."  *JP Morgan Chase Bank, N.A.,* 2012 WL 12930710, at \*2 (quoting *Moore v. Coffee County, TN*, 402 F. App'x 107, 108 (6th Cir. 2010)) (other citations omitted).  "A Rule 59(e) motion ... is not the proper vehicle to raise arguments that should have been made before judgment."  *Id.* (quoting *Russell v. GTE Gov't Sys. Corp.*, 141 Fed. App'x 429, 434 (6th Cir. 2005)) (other citations omitted).

## IV.  ANALYSIS

As summarized above, Defendants have raised numerous arguments pursuant to Rule 50 and Rule 59.  The Court will address each argument separately.

### A.  Rule 50

Defendants assert that Plaintiff presented insufficient proof to show that Dr. Borchers, and therefore, ORS violated his procedural due process rights.  Defendants further argue that Plaintiff has no claim for constructive discharge, and even if he did, he presented insufficient proof on this issue.  Further, Defendants argue that Plaintiff presented insufficient proof to show that ORS breached his contract.  Defendants maintain that Plaintiff voluntarily retired.  Finally, Dr. Borchers and Dr. Marczak argue that no reasonable juror could find that they defamed or placed Plaintiff in a false light.

The Court will address these arguments in turn.

### 1.	Due Process

Defendant ORS argues that it did not violate Plaintiff's due process rights.  Specifically, Defendant argues that it can only be held liable for violating Plaintiff's due process rights if co-Defendant, Dr. Bruce Borchers, were found liable for violating Plaintiff's due process rights. ORS cites to the jury instruction on page thirty (30) and argues that Dr. Borchers had final authority to suspend Plaintiff without pay pending investigation per Oak Ridge Schools Board of Education Policy 5.200 and Tennessee Code Annotated § 37-1-403(a)(2).  ORS states that Dr. Borchers made this decision with the advice of counsel.  ORS states that Dr. Borchers and Dr. Marczak both testified that because Plaintiff was suspended pending a criminal investigation, Board Policy 5.200 did not require a pre-suspension hearing.  ORS adds that Plaintiff had no property rights with respect to his coaching position.   ORS explains that with respect to his teaching position, Plaintiff was not terminated, and therefore, his procedural due process rights were not implicated.  Dr. Borchers makes similar arguments, and Dr. Marczak adds that he cannot be held liable because he did not have authority to terminate Plaintiff.

As an initial matter, the parties do not appear to dispute that Plaintiff was not entitled to due process with respect to his coaching position.  *Franklin Cty. Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 813 (Tenn. Ct. App. 2010) ("The teaching position is protected by tenure status; the coaching position is  protected  by  whatever  contract  he  has  with  the  board  to perform coaching duties.") (internal quotations omitted); *see also Metro. Nashville Educ. Ass'n v. Metro. Bd. of Pub. Educ.*, No. M2011-02242-COA-R3CV, 2013 WL 870656, at *7 (Tenn. Ct. App. Mar. 7, 2013) (explaining that a teacher relieved of his/her coaching responsibilities need not

be given formal written notice and a hearing) (quoting *Lawrence Cty. Educ. Ass'n v. Lawrence Cty. Bd. of Educ.*, 244 S.W.3d 302, 314 (Tenn. 2007)).[1]

With respect to his teaching position, ORS argues that it can only be held liable if Dr. Borchers were found liable. ORS states that Plaintiff's due process rights were not violated because Dr. Borchers did not terminate Plaintiff and Plaintiff was not constructively discharged. Plaintiff argues that these are new arguments, and therefore, waived.

As explained above, Rule 50 motions are not vehicles to litigate matters that were not previously raised. As Defendants note, during the jury charge conference, the parties discussed the jury instruction regarding "Liability for Decision by Official with Authority." The draft version stated as follows:

> Defendant ORS can be held liable under 42 U.S.C. § 1983 based upon Defendant Borchers's and/or Defendant Marczak's decisions to suspend Plaintiff from his teaching position and/or Plaintiff's constructive discharge because Defendant Borchers, as Superintendent, had final authority to take those actions with respect to Plaintiff.

[Doc. 261 at 4].

The following exchanged occurred at the jury charge conference:

> Mr. Taylor: 30, so in the second line there, "and/or," we would respectfully request that we strike the "and slash or Defendant Marczak's decision," and change that to "decision" to eliminate the reference to Defendant Marczak. Same in the reference to Dr. Marczak on the third to last line as the assistant superintendent. Again, the testimony has been unequivocal and undisputed at this point that decision such as hiring and firing are only made by the director of schools at Oak Ridge. That's pursuant to state law. So we would request that—that the Court eliminate the reference to Defendant Marczak there.
>
> The Court: All right. Plaintiff's counsel position?

---

[1] The Court notes that the jury charge discussing "due process" states that Plaintiff must prove that he was suspended without pay "from his teaching position." [Doc. 240 at 120].

> Mr. Janney: That's—there's no objection. Unless—my only thought on that, is I don't know if he had apparent authority to act.
>
> The Court: I do think that is the testimony that we've been given, that it was Dr. Borchers, that he had the decision-making authority.
>
> Mr. Janney: We'll go with that.

[Doc. 240 at 140]. Thus, the Court edited the instruction as defense counsel suggested. Earlier, however, Defendants made objections to the proposed verdict form, stating, "[W]e have all these questions and we're going independently between each and every defendant, I don't think that that is helpful in this instance. I think it should be a collective decision as it relates to whether the plaintiff has proven by a ponderance of the evidence that any of the defendants violated his federally protected due process rights. If not, then they can move on." [Doc. 240 at 15].

The Court has reviewed Defendants' Motion for Judgment as a Matter of Law [Doc. 256-1], and they do not argue that ORS can only be held liable if Dr. Borchers is held liable. Given that the Motion does not raise this issue, coupled with the statement during the conference that it should be a collective decision, the Court finds that Defendants waived this argument. *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (finding that the county waived the argument that municipal liability must be premised on an individual employee's liability).

Plaintiff also asserts that Defendants waived their argument that his due process rights were not implicated in this case because he was not terminated. Plaintiff argues that Defendants did not make this argument at summary judgment, or in the oral or written 50(a) motions, or at any other time during the trial. Defendants state that in their Rule 50(a) motion, they asserted that Plaintiff's constructive discharge theory fails because Plaintiff is unable to establish a deprivation of due process. Defendants state that they have always taken the position that Plaintiff voluntarily resigned from his position after Defendants suspended him without pay pending an investigation.

Given that Defendants have taken the position that Plaintiff voluntarily resigned, the Court will consider this argument.

Defendants argue that Plaintiff's due process rights were not implicated in this case because he was not terminated from his teaching position by Dr. Borchers. The Court disagrees. "In Tennessee, '[a] tenured teacher, like other public employees, possesses a constitutionally protected property interest in continued employment, and she cannot be deprived of this right without due process.'" *Monce v. Marshall Cty. Bd. of Educ.*, 307 F. Supp. 3d 805, 819 (M.D. Tenn. 2018) (quoting *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012)). Further, "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (quoting *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004)). In addition, in *Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997), the Supreme Court explained as follows:

> To determine what process is constitutionally due, we have generally balanced three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest."

*Id. (*quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)); *see Kunz v. Franklin City Sch. Dist. Bd. Educ.*, No. 1:06-CV-012, 2007 WL 2835627, at *5 (S.D. Ohio Sept. 26, 2007) (balancing these factors to determine whether plaintiff received adequate due process before she was notified that the board suspended her without pay).

In considering these factors, the Court finds that Plaintiff's suspension triggered his due process rights. With respect to the private interest, Plaintiff was suspended indefinitely without pay. *Williams v. Com. of Ky.*, 24 F.3d 1526, 1538 (6th Cir. 1994) ("We have frequently recognized the severity of depriving a person of the means of livelihood."). Second, there was a risk of an

erroneous deprivation because no procedures were used and additional safeguards would have helped, especially in light of the age of the allegation (i.e., 12 years old). Finally, the Court recognizes the government's interest in protecting students. Here, however, the allegation was from a former student who graduated in 2003.

In balancing these factors, the Court finds that Plaintiff was entitled to due process prior to his suspension, which he did not receive. *Boals v. Gray*, 775 F.2d 686, 689 n.5 (6th Cir. 1985) ("Finally, we note that the *Carter* court recognized that even a two-day suspension without pay may constitute a property deprivation, and that its holding was confined specifically to the facts presented.") (citing *Carter v. Western Reserve Psychiatric Habilitation Center*, 767 F.2d 270 (6th Cir. 1985)). There is evidence in the record that shows that Plaintiff was not given an adequate explanation of the evidence or an opportunity to respond prior to being escorted out of the building. Accordingly, Defendants' arguments are not well taken.

Further, the Court agrees with Plaintiff that there is sufficient evidence in the record for the jury to find that Plaintiff was forced to retire, or constructively discharged. Defendants contend that Plaintiff's age-related constructive discharge claims were properly dismissed. The Sixth Circuit has noted, "A public employee with a property interest in continued employment is deprived of that interest by her employer if the employer constructively discharges her by forcing her to resign involuntarily." *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004). Further, "[w]hehther an employee's resignation was involuntary depends upon whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position." *Id.* (citations omitted). The factors relevant to this inquiry include: (1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice [she] was given, (3) whether the

employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation." *Id.* (quoting *Lenz v. Dewey,* 64 F.3d 547, 552 (10th Cir.1995)).

The parties strongly contested whether Plaintiff was forced to retire or whether the decision was voluntarily. Plaintiff put on proof that Defendants suspended him from his coaching position without considering Plaintiff's explanation, Dr. Marczak's statements threatening Plaintiff's teaching position (i.e., "When I find you negligent, I am going to fire you."), Dr. Marczak's giving Plaintiff a formal letter of concern on April 20, 2015, for an email he sent over two months earlier, the April 27 Memo placed in Plaintiff's personnel file that was not completely truthful, Dr. Borchers's comment to Plaintiff that he (Dr. Borchers) was not interested in the truth, the suspension without pay and without due process, Dr. Marczak's statements to Plaintiff and others that Plaintiff was going to be arrested, and Plaintiff was escorted out of the building.

The jury also heard Defendants' evidence that Plaintiff's decision was voluntarily, such as Plaintiff putting his house on the market prior to the above events and Plaintiff's meetings with retirement counselors. The jury was able to hear both sides and weigh the evidence accordingly. Accordingly, Defendants' arguments are not well taken.

### 2. Plaintiff's breach of contract claim

ORS argues that there is no dispute that Plaintiff had a contract with ORS. ORS states that with respect to his coaching position, Plaintiff continued to receive his supplement even after his removal. ORS states that it suspended Plaintiff on April 30, 2015, without pay pending the investigation and that Plaintiff was only entitled to back pay if he was vindicated or reinstated. ORS states that Plaintiff did not put forward any evidence establishing that he had been vindicated or reinstated.

Plaintiff asserts that Dr. Borchers did not provide him with a copy of the charges and a statement of his legal duties, rights, and recourse before taking the adverse action. Plaintiff asserts that ORS breached the contract when it permitted Dr. Borchers to suspend him without pay for more than three days and for failing to comply with the Tennessee Teacher's Tenure Act. Further, Plaintiff states that he was vindicated or exonerated when the Oak Ridge Police Department determined that Defendants learned that there was not enough probable cause to charge him with anything. Plaintiff adds that if the Court determines that he is entitled to reinstatement, he will be entitled to his full salary with no offsets from April 30, 2015, to reinstatement.

ORS replies that Dr. Borchers's decision complied with Tennessee Code Annotated § 49-5-511(a)(3) and Board Policy 5.200. ORS maintains that Plaintiff was not exonerated or reinstated to his position.

The Court finds that there was substantial evidence to find that Plaintiff had been vindicated. Defendant cites to the Tennessee Supreme Court's decision in *Van Hooser v. Warren County Board of Education*, 807 S.W.2d 230 (Tenn. 1991). In *Van Hooser*, the teacher argued that the manner in which her suspension from teaching was handled violated the Teacher Tenure Act. *Id.* at 238. Citing Tennessee Code Annotated § 49-5-511, the Court noted:

> A superintendent may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal, provided that if the teacher is vindicated or reinstated, he shall be paid the full salary for the period during which he was suspended.

*Id.* The Court further explained "vindicated" and "reinstated" as follows:

> To vindicate is "to clear of accusation, blame, suspicion, or doubt with supporting arguments or proof" or "to justify, especially in light of later developments." The term carries with it the implication of exoneration. To reinstate means "to restore to a previous condition or position," "to put back or establish again, [as] to reinstate the ousted chairman." Admittedly, the term "reinstate"

17

does not necessarily carry the same implication of exculpation as does the term "vindicate." However, when viewed in context, that is, in terms of a finding by a board of education that the superintendent's act of suspension is not warranted and that the teacher should be restored to her or his previous position, the word reinstatement is clearly a term of art. It implies that the teacher has either been exonerated, or if not exonerated, at least excused of the conduct that led to the suspension, *i.e.,* either that there was no basis for the suspension after all, or that there were extenuating circumstances in mitigation. In either case the teacher, having been thus restored, is entitled to the pay that would have been forthcoming had the suspension never occurred.

*Id.* at 240–41 (internal citations removed).

In the instant matter, however, Plaintiff presented evidence to the jury that he was vindicated. During the trial the following exchange occurred:

> Q.    But you're aware of the fact –aware of the fact that when the police concluded the investigation, they found there was not enough probable cause to file any charges. Correct?
>
> A.    I believe there was a statement – correct. There was a statement that was put out about that.
>
> Q.    And you knew that Mr. Anderson was never charged, let alone convicted, of any criminal offense at any time. Correct?
>
> A.    Not charged or convicted, correct.

[Doc. 236 at 63]. There was sufficient evidence in the record from which the jury could have found that Plaintiff was vindicated, and therefore, should have been paid the remainder of his contract. Accordingly, the Court finds Defendants' arguments not well taken. Further, with respect to Plaintiff's argument regarding reinstatement, Plaintiff has not put forward any evidence or argument as to why reinstatement would be appropriate in this case.

### 3. Defamation and False Light Against Dr. Borchers

The jury awarded Plaintiff $190,000 in compensatory damages and $250,000 in punitive damages against Defendant Borchers with respect to Plaintiff's claims of defamation and false light. Defendant Borchers argues that no reasonable juror could find that he defamed Plaintiff because Defendant Borchers denied making the allegedly defamatory statements, the alleged statements were not defamatory, and Plaintiff presented no proof that Dr. Borchers knew the alleged statements were false or that he acted in reckless disregard for their truth.

In order to establish a case for defamation, Plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Shamblin v. Martinez*, No. M2010-00974-COA-R3CV, 2011 WL 1420896, at *3 (Tenn. Ct. App. Apr. 13, 2011) (other citations omitted). Because public school teachers are deemed public officials for purposes of defamation actions, *Campbell v. Robinson*, 955 S.W.2d 609, 612 (Tenn. 1997), the actual malice standard applies, and Plaintiff must prove that Dr. Borchers had knowledge that the alleged statements were false or that Dr. Borchers made the statement with reckless disregard of whether it was false or not. *Shamblin,* 2011 WL 1420896, at *2 (other citations omitted). With respect to a false light claim, the plaintiff must prove that the defendant published a matter concerning the plaintiff, placing the plaintiff before the public in a false light which is highly offensive to a reasonable person, and the defendant had knowledge that his statement was false or acted recklessly with regard to the falsity of the publicized statement. *Loftis v. Rayburn*, No. M201701502COAR3CV, 2018 WL 1895842, at *7 (Tenn. Ct. App. Apr. 20, 2018). The actual malice standard applies when plaintiff is a public official. *Id.*

The Court finds that that there is sufficient evidence in the record to support the verdict. The April 27 Memo was placed in Plaintiff's personnel file, and the Memo contained a number of false findings. When asked about the April 27 Memo, Dr. Borchers stated, "I'm sure [Plaintiff] heard every single one of these bullets, but we formalized it, put it into this memo." [Doc. 235 at 172]. Dr. Borchers testified that he knew the April 27 Memo would be placed in Plaintiff's personnel file. [*Id.* at 189]. Dr. Borchers testified that many of the media outlets requested Plaintiff's personnel files and were given the April 27 Memo. [*Id.* at 192]. Further, there is evidence in the record that Dr. Borchers told Plaintiff that he was not interested in truth. [Doc. 236 at 189]. While Dr. Borchers denied making this comment, [Doc. 235 at 163], it is the jury role's, not the Court's, to make credibility findings.

### 4. Defamation and False Light Against Dr. Marczak

Dr. Marczak argues that no reasonable juror could find that he defamed Plaintiff because he denied making the allegedly defamed statements and Plaintiff presented no proof that Dr. Marczak knew that the alleged statements were false or that he acted in reckless disregard.

The jury listened to the evidence in this case and found otherwise. While Dr. Marzack denied making statements, the jury rejected his denials. Weighing the evidence is within the province of the jury. Further, Mike Haygood testified as follows:

> Q. Shortly after that, shortly after you had the discussion with Dr. Borchers about the e-mail allegation, did you have any interaction with Dr. Marczak?
>
> A. I did. Numerous occasions. I didn't really have any— nothing directly, but when he was in the building for possibly another reason I would see him, he would – he did mention to me several times that –about the charges against Mr. Anderson, and that basically they had the information that he was guilty of those charges.
>
> Q. What all did Dr. Marczak say in that regard?

> A. And I'm paraphrasing somewhat, but he was – just a number of times made the comments like, "He's going down. We have him. He's going to jail. He's never going to teach again."
>
> Q. And did you say this happened on one occasion or more than one occasion?
>
> A. No. On more than one occasion. I kept waiting, I guess, for the indictment to come down or something to happen. Because my impression from his statements were, this is going to happen soon. It's going to happen today. It's going to happen real soon. And then the days went by and weeks went by, and it did not happen.

[Doc. 237 at 97-98]. In addition, Reddick testified that Dr. Marczak made similar statements to him, such as, "We've got him. He's going to jail. He's going down." [*Id.* at 131-32]. Dr. Marczak had no proof that Plaintiff was going to jail.

In addition, and similar to the above analysis, Plaintiff established that Dr. Marczak placed false information (i.e., the April 27 Memo) in his personnel file that was later given to the media. The Court agrees with Plaintiff that the false information as a whole strongly suggested that Plaintiff had seriously neglected his students and deliberately put them in harm's way. Accordingly, the Court finds Defendants' arguments not well taken.

## B. Rule 59(a)

In the alternative, Defendants request that the Court order a new trial, arguing that the jury's verdict was against the weight of the evidence. Defendants' argument regurgitates their above arguments, which the Court has already considered. Defendants further argue that the Court erred in the jury instructions and in its rulings with respect to certain evidence. The Court will address these objections separately.

1. **Constructive Discharge Instructions**

Defendants argue that they were improperly prejudiced by the "Constructive Discharge" instructions because all of Plaintiff's age-related claims were properly dismissed following the close of proof at the trial. Defendants state that the Amended Complaint claimed that Defendants' actions were pretext for age discrimination, which ultimately led to Plaintiff's constructive discharge. Defendants argue that when the Court dismissed the age claims, it also dismissed the constructive discharge claims. Plaintiff claims that the constructive discharge theory has never related to only his age discrimination claims and that it also related to his due process claims.

Specifically, Defendants object to the following instructions:

Constructive Discharge

> Plaintiff contends that, although he retired from his employment, the retirement constituted a constructive discharge. Under the constructive discharge doctrine, an employee's reasonable decision to retire under coercion or duress or because of intolerable working conditions is considered to be the same as an actual termination.

> To establish a constructive discharge, Plaintiff must prove that Defendants deliberately created intolerable working conditions, as perceived by reasonable person in Plaintiff's position, with the intention of forcing him to resign or retire.

> . . .

> Plaintiff claims that while employed by Defendant ORS, Defendants suspended him indefinitely, without pay and without verifying or conducting any investigation of the allegations against him; did not give him adequate notice of the allegations, a statement of his rights or recourse, and a hearing or meaningful opportunity to respond before suspending him; submitted the allegations to the Oak Ridge Police Department, depriving him of an opportunity to respond or be heard after the suspension; and constructively discharged him.

Defendants further object to the instruction, "That as a result of the suspension without pay and/or the constructive discharge, he suffered damages," which was included in the due process

claims instruction, and they also object to the inclusion of "constructive discharge" in the damages portion under § 1983. Defendants state that it was error to include the "constructive discharge" language in the due process instructions because Plaintiff's age claims were dismissed, and therefore, without his constructive discharge claims, Plaintiff could only claim lack of due process if he was terminated.

The Court does not find any error. Plaintiff claimed throughout this lawsuit that he was constructively discharged or forced to retire. The inclusion of the constructive discharge instruction was simply to provide the jury information on what "constructive discharge" means. Accordingly, the Court finds Defendants' argument not well taken.

Finally, Dr. Marczak argues that it was error to include him in the due process instructions. Dr. Marczak states that the instructions should have specified that Plaintiff's due process claims were against Dr. Borchers and ORS. Dr. Marczak, however, did not previously object to these instructions, and now his objection is waived.

### 2. Tennessee Consolidated Retirement Documents from 2013

Defendants argue that the Court erred by excluding 2013 Tennessee Consolidated Retirement System ("TCRS") documents showing that Plaintiff met with retirement representatives in 2013 and requested estimates of retirement benefits based on a June 2015 retirement date. Defendants argue that admitting such documents would have rebutted Plaintiff's claim that he was forced to retire effective June 2, 2015.

The Court ruled that the 2013 TCRS documents were too remote. [Doc. 235 at 27-28]. The Court does not find this ruling to be in error. In any event, Plaintiff testified to meeting with retirement representatives in 2013. Specifically, Plaintiff was cross examined about this issue as follows:

Q.     In November –strike that.  In –at some point prior to January of 2015, you met with representatives at the Tennessee Consolidated retirement services. Correct?

A.     Correct.  The first time in 2006 and the second time possibly 2013.  I don't remember.

Q.     And in 2013, you were running projections with a projected retirement date of June 1, 2015. Correct?

A.     Correct.

[Doc. 238 at 167].   Accordingly, the Court finds Defendants' arguments not well taken.

### 3.     Detective Kevin Craig's Investigative File and Notes

Defendants argue that the Court erred by excluding Detective Kevin Craig's investigative file, which included an incident report.  Defendants state that Plaintiff was allowed to testify that his case was closed and that he was never charged and that such testimony opened the door to Detective Craig's investigative file.  Defendants state that Detective Craig's file contains notes that the incident was closed due to the statute of limitations expiring.  Further, with respect to Detective Craig's handwritten notes, Defendants state that such notes pertained to Adrienne Wiest's and Becca Moyer's allegations.  In addition, Defendants state that the handwritten notes include Plaintiff's response to the Adrienne Wiest allegation, which was "What decade?" Defendants argue that Detective Craig's notes also show that he sent an email to the Assistant District Attorney, regarding the statute of limitations for offensive touching, sexual battery, and sexual battery by an authority figure.

With respect to Detective Craig's handwritten notes, the Court excluded them because they were irrelevant to the decisions made in April 2015.  The parties only discovered the handwritten notes during Detective Craig's deposition on October 26, 2017, well after the Complaint in this case had been filed.  Further, the Court's excluding of the investigative file was also not an error

because the Court allowed Defendants to present evidence that the investigation did not result in a finding of innocence or otherwise. *See* [Doc. 237 at 101].

### 4. Attorney General David Clark's Letter

Defendants assert that the Court erred by not allowing Defendants to enter District Attorney General David Clark's Letter dated August 13, 2015, into evidence but allowed Plaintiff to testify that his case was closed. Defendants assert that the inclusion of the letter would have helped them establish that Plaintiff's retirement was voluntary and not forced. Further, Defendants state that the exclusion was prejudice because the letter establishes that Adrienne Wiest's allegations were similar to the allegations of other former students, but because the statute of limitations expired, charges could be not brought.

When Attorney General David Clark's Letter was discussed during the trial, the undersigned noted that the letter raised other issues that had not been previously discussed. [Doc. 237 at 100]. Defense counsel stated that he would like to inquire as to whether Attorney General Clark made a determination as to whether the inappropriate touching occurred. [*Id.* at 101] (Mr. Taylor: "To make a determination that it didn't happen, it's just that he couldn't prosecute it."). The Court stated as follows:

> I think it's fair for you to ask. Are you aware that the Attorney General made a decision not to prosecute this case without making a determination as to whether the allegations are true or not. I'll let you do that. I think that's fair, given the plaintiff emphasizing that no charges were brought. But I think this document has got too much other stuff in it we haven't talked about.

[*Id.* at 101]. Accordingly, the Court finds Defendants' arguments not well taken.

### 5. Adrienne Wiest's Testimony

Defendants argue that the Court erred by not allowing Adrienne Wiest ("Wiest") to testify and by not allowing her to read the email into the record. Defendants state that if jurors had been

allowed to hear Wiest's testimony, they would have likely realized that even though Plaintiff was not formally charged, Wiest is a credible witness who was a child at the time the allegations took place.

The Court finds no error. First, the Court allowed Wiest's email into evidence, so the jury was able to read the allegation. Defendants never spoke to Wiest. It is undisputed that Wiest had no personal knowledge of Defendants' actions in 2015. Wiest's testimony would simply be put forward to inflame the jury. *See also* [Doc. 178] (Order on Motions in Limine). Defendants' request to put Wiest on the stand simply to read the email, *see* [Doc. 237 at 269], serves no purpose other than to inflame the jury. Accordingly, the Court finds Defendants' arguments not well taken.

**6.     Becca Moyer's and Jenny Kaine's Testimony and the 1980s Declaration**

Defendants argue that the exclusion of Becca Moyer's and Jenny Kaine's testimony improperly prejudiced them because the jurors were not able to fully understand that Plaintiff was suspended without paying pending the investigation in order to protect current students Oak Ridge High School.

The Court already addressed most of Defendants' challenges. *See* [Doc. 178] (Order on Motions in Limine). With respect to the 1980s Allegation, the Court found this allegation too remote for any possible relevancy in this case. None of the decision makers were present at the school during the time.

With respect to the 2014 allegation by Moyer, the Court did not exclude evidence relating to the 2014 allegation because Plaintiff acknowledged that he intended to show that Defendants handled the investigation of this allegation much differently than how Defendants handled the allegations into the Wiest email. Her testimony, however, is irrelevant to the issues in this case. The truth or falsity of Moyer's allegations had nothing to do with Defendants' actions in 2015.

Finally, with respect to Kaine's allegation, as stated in the Court's previous Order, the parties discovered this allegation during a deposition taken on October 26, 2017, over a year after the case had been filed. Given that Defendants did not know about the allegation at the time of their decision to suspend Plaintiff, Kaine's testimony is irrelevant to what happened in 2015. Accordingly, Defendants' arguments are not well taken.

**7.      Hearsay**

Defendants argue that the Court erred when it overruled their hearsay objections. Defendants state that Plaintiff's witness, Sam Early, testified about what other community members said during meetings he attended following Plaintiff's suspension without pay.

The Court has reviewed the transcript of Early's testimony, and there were no hearsay objections to this aspect of his testimony. The following exchange occurred during Early's testimony:

> Q.      Did you go to the Andersons' house and meet with Mr. Anderson.
>
> A.      I did that same day.
>
> Q.      What happened in that meeting at the Anderson house?
>
> A.      Eddie and I spoke for some period of time, and Eddie basically relayed the same store that Marsha had given me earlier.
>
>          During that conversation, I mentioned that Eddie needed—I felt that Eddie needed to be careful in the fact that he was terminated without pay, that he needed to consider retiring to protect his retirement. Eddie had indicated he wanted to continue to teach once this was cleared up, because he loved being a teacher. But I told him he needed to seriously consider the fact that he might be risking his retirement under the terms of his suspension and what may subsequently happened.

[Doc. 237 at 86]. There were no hearsay objections to this testimony, and therefore, any argument is now waived.[2]

### 8. Newspaper Articles

Defendants argue that the Court allowed several newspaper articles into evidence, but the articles constituted impermissible hearsay. [Ex. 45]. During the trial, the Court found the articles did not constitute hearsay because they were not being offered for the truth of the contents but rather to show notice of what was displayed to the public at the time. [Doc. 236 at 53]. Accordingly, the Court finds Defendants' argument not well taken.

### 9. Scott Estep's Testimony

Defendants argue that the Court erred in allowing Scott Estep to testify. Defendants assert that Plaintiff's counsel violated the federal statute when he paid Estep's airfare to and from Florida when Estep lived in Oak Ridge, Tennessee. Defendants argue that had Estep been prevented from testifying, jurors may have ruled differently on Plaintiff's due process claim.

Plaintiff argues that Defendants never objected to Estep testifying. Plaintiff states that instead, he objected to Defendants asking Estep about any reimbursements to cover his travel expenses. Plaintiff states that the Court overruled his objection. In their reply, Defendants accuse Plaintiff of "seriously mischaracterize[ing] what actually occurred at trial." [Doc. 261 at 37].

Prior to Estep testifying, Plaintiff's counsel requested a sidebar. Plaintiff's counsel explained that it was Oak Ridge Schools' spring break and that Estep had already been in Florida with his son. [Doc. 236 at 220]. Plaintiff's counsel stated that in addition to the $40 witness

---

[2] There was a hearsay objection to what Ms. Anderson told Early, but Defendants do not mention this aspect of Early's testimony. Further, there was a hearsay objection to Plaintiff testifying what Early said when Early came to Plaintiff's house, but such statements were not being offered for their truth but offered to show Plaintiff's motive for turning in his retirement notice. [Doc. 238 at 154].

appearance fee, Plaintiff's counsel also paid for Estep's travel expenses and offered the receipt to the Court.  [*Id.*]  Plaintiff's counsel stated, "I just don't want that coming out to prejudice, like I paid him to come here."  [*Id.*].  Defense counsel argued that such was "wildly unethical" and objected.  [*Id.*].  Defense counsel continued, "And I do intend to ask him about that."  [*Id.*].  The Court then asked, "Object to him being here?"  [*Id.* at 221].  Defense counsel stated, *"No.*  I intend to cross-examine him that Mr. Janney or his client offered to and paid him to be here today by paying for a flight.  The rule speaks very specifically to common carrier fees.  It limits it from their residence, Your Honor.  His residence is in Anderson County."  [*Id.* at 221] (Emphasis added).  The Court then permitted defense counsel to cross examine Estep on this issue.  [*Id.* at 221-27].

As summarized above, Defendants did not request that Estep be prevented from testifying.  Accordingly, Defendants waived this argument.  In any event, however, Defendants requested that they be allowed to ask Estep who paid for his airfare to and from Tennessee, and the Court agreed that this line of questioning was appropriate.

### 10.    Dr. Baum

Defendants argue that the Court erred in failing to strike Dr. Charles Baum's testimony.  Defendants state that his testimony was irrelevant after all of Plaintiff's age-related claims were properly dismissed.  Defendants state that the jurors awarded Plaintiff $635,097.00 in damages against ORS for due process violations, which is the amount Dr. Baum opined that Plaintiff would be entitled to receive.  Defendants argue that Dr. Baum's economic losses projections factored in money and benefits that the Plaintiff would have received during the period of his suspension through the date of his trial, along with the money and benefits he would have received if he had continued working as a teacher at Oak Ridge High School following his trial for approximately

seven more years. Defendants state that in summary, Dr. Baum's economic losses related to damages for his "wrongful, unlawful, discriminatory" discharge.

Plaintiff states that Defendants never filed a motion to exclude his testimony or report. In addition, Plaintiff states that Defendants never moved to strike his report or testimony at any time prior to the case being submitted to the jury.

The Court agrees that Defendants never raised this issue prior to the case being submitted to the jury. While they did not need to raise this issue prior to trial (because at that time, the age claims still existed), they had an opportunity to raise this issue before the case was given to the jury. In fact, there was a specific instruction on the weight to be given to Dr. Baum's testimony, and during the conference, Defendants never objected to his testimony, even after Plaintiff's age claims were dismissed. Accordingly, the Court finds Defendants' arguments not well taken.

## C.     Amending Judgment

Defendants argue that in the event the Court declines to order a new trial, the Court has discretion to reduce the jury award. Defendants request a remittitur of all Plaintiff's awards.

As mentioned above, "A jury verdict should not be remitted by a court unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (quoting *Gregory v. Shelby Cnty*, 220 F.3d 433, 443 (6th Cir. 2000)) (quotations omitted). Jury awards should be left undisturbed unless the award is "beyond the range supportable by proof, (2) so excessive as to shock the conscience, or (3) the result of a mistake. *Id.* (quoting *Bickel v. Korean Air Lines Co.,* 96 F.3d 151, 156 (6th Cir. 1996)).

With the above analysis in mind, the Court will turn to Defendants' arguments.

1.     **Due Process Awards**

First, Defendants argue that Plaintiff's due process claim lacked all merit and that the jury's award of due process damages against them clearly exceeded the maximum amount a jury could have reasonably awarded based on the evidence. Second, Defendants argue that the jury's due process award was likely the result of a mistake. Finally, Defendants argue that the jury's due process award is so excessive as to shock the conscience.

In the present matter, the jury awarded the following on Plaintiff's due process claims: (1) $635,097 against ORS; (2) $25,000 in compensatory and $50,000 in punitive damages against Dr. Borchers; and (3) $25,000 in compensatory and $75,000 in punitive damages against Dr. Marczak. The Court does not find remitting the above awards warranted. As Plaintiff explains, he put on expert testimony as to the economic losses that he sustained as a result of Defendants' violations, and Defendants offered no countervailing evidence. With respect to the awards against the individual Defendants, the Court agrees that they are within the range of reasonableness.

Defendants argue that the jury's award is so excessive as to shock the conscience. Defendants state that the award of $635,097 is one of the largest awards ever given to a plaintiff for a procedural due process claim and that it appears to be the be the largest procedural due process award in the surrounding circuits. Both parties cite to decisions that support their arguments.

"Endeavoring to compare awards is difficult and often unfruitful, because the factual circumstances of each case differ so widely and because it places reviewing courts in the position of making awkward assessments of pain and suffering better left to a jury." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 906 (6th Cir. 2004). The Court does not find the jury's award to be excessive as to shock the conscience given the evidence in this case. Plaintiff presented expert testimony as to the economic losses he sustained. The jury was entitled to consider such evidence

and give it the weight they believed it deserved. Plaintiff further put on proof about the impairment of his reputation, personal humiliation, mental anguish, and suffering. Plaintiff had been a teacher for thirty-six (36) years and when Dr. Borchers received the allegation, Plaintiff was escorted out of the building without knowing the exact allegations against him and was told he was going to be arrested. [Doc. 238 at 147]. Plaintiff testified that he asked Dr. Marczak how to defend himself, and Dr. Marczak declined to give him any information. [*Id.* at 146]. Plaintiff testified that he panicked. [*Id.* at 148-49]. He testified that the media reported that he was suspended without pay and escorted out of the building. [*Id.* at 162]. He testified that he was panicked, embarrassed, he was not sure what to do or what kind of response to make. [Id. at 163-64]. His wife also testified to Plaintiff's reaction to being escorted out of the building and the emotional impact on Plaintiff. [*Id.* at 238 at 250-51, 255-56]. Accordingly, the Court does not find that the due process awards are excessive.

### 2. Breach of Contract

Defendants argue that Plaintiff's breach of contract claim lacked all merit and that the jury award clearly exceeded the maximum amount that could have reasonably been awarded based on the evidence. Defendants argue that according to Plaintiff's contract and the testimony, Plaintiff made $62,620 in base pay and $5,195 for being the head track coach. His total pay equaled $67,815. Defendants argue that Plaintiff testified that he received his pay over twelve months and that his coaching supplement was not affected when he was removed as head coach. Defendants state that Plaintiff received $185.80 each day for 365 days and that at trial, he claimed backpay from May 1, 2015, to August 4, 2015, or 96 days. Defendants state that his back pay would entitle him to $17,836.27, but the jurors awarded him $25,000 in back pay.

Plaintiff does not respond to Defendants' argument. Given that Plaintiff has not responded to this argument, and the evidence was that Plaintiff was not paid from May to August, the Court finds the jury's award of $25,000 for ORS's breach of contract **SHALL** be reduced to $17,836.27.

### 3. Jury Awards for Defamation and/or False Light

Dr. Borchers and Dr. Marczak argue that the jury's award was likely a mistake due to improper jury instructions. They assert that by not specifying in the "Damages for Defamation and False Light" jury instruction that only one recovery may be had for a single instance of publicity, jurors were likely confused and led to believe that they could award damages for both.

The jury found that Dr. Borchers and Dr. Marczak defamed Plaintiff and put him in a false light. The damages section of the jury verdict form provided:

> 5. If you found in favor of Plaintiff Anderson in Question 1 or Question 3 or both, state what damages, if any, he should be awarded against Defendant Marczak.
>
> 6. If you found in favor of Plaintiff Anderson in Question 2 or Question 4 or both, state what damages, if any, he should be awarded against Defendant Borchers.

[Doc. 196]. The Court, however, went over the jury verdict form with the parties prior to the case being submitted to the jury, and Defendants did not raise an objection to this portion of the form. Accordingly, the Court finds Defendants' objections waived.

Defendants further argue that Plaintiff presented no evidence that Dr. Marczak acted with actual malice or reckless indifference and therefore punitive damages relating to such claims are unwarranted. For the reasons explained above, the Court disagrees. With respect to Dr. Marczak, there was testimony that he told others that Plaintiff was going to jail, and there was no basis to make this comment. Further, there was evidence that Dr. Borchers and Dr. Marczak recklessly placed false findings of fact casting Plaintiff in a highly offensive false light before the public in his personnel file. The Court does not find a remitter warranted.

## V.    CONCLUSION

Accordingly, for the reasons stated above, the Court finds Defendant ORS's Motion to Alter Judgment, or Alternatively for a New Trial [**Doc. 213**] to be **GRANTED IN PART**, and Defendants Borchers's and Marczak's Motions to Alter Judgment, or Alternatively, for a New Trial [**Docs. 215 and 217**] to be **DENIED**.   The Court further **ORDERS** that the jury award for ORS's breach of contract **SHALL** be reduced from $25,000 to $17,836.27.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge